# Kentucky Transport Corporation v. Simcox et al.

Feb. 20, 1940.

Chas. C. Marshall, Judge.

Todd & Beard and Harris W. Coleman for appellant.

Kinsolving & Reasor and George L. Willis, Jr. for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

The appeal is from a judgment for $3,370, recovered by James S. Simcox for personal injuries and expenses, and $500 recovered by his father, Joseph S. Simcox, the owner of an automobile practically destroyed in a collision with appellant's truck.

Suit for damages were filed against the Great Atlantic and Pacific Tea Company, the Kentucky Transport Corporation, and F. Brahm, the driver of the truck, but before submission of the case the petitions were dismissed as against the Tea Company and Brahm. However, those two parties appear in the statement of appeal as co-appellants. The appeal by them is dismissed.

The points relied on for a reversal of the judgments are, that the trial court erred in refusing a peremptory instruction for the defendant on the grounds of absence of its negligence and proof of contributory negligence on the part of James S. Simcox, and because the verdict in his favor is excessive. The refusal to give a certain offered instruction is not pressed.

James S. Simcox and another young man, Charles Hansbrough, were traveling east on U. S. Highway No. 60 from Louisville to Frankfort on the night of February 1, 1938. While going up a long, straight hill near the Jefferson-Shelby County line, a mile or so west of Simpsonville, about 11:30 o'clock, the automobile driven by Simcox ran into the rear of the defendant's truck. It was a large box-car type, being used to carry merchandise for the Great Atlantic and Pacific Tea Company. According to Simcox he had been driving 40 or 45 miles an hour when another car traveling west came over the crest of the hill. He slowed down a little and dimmed his lights. He first saw the truck, traveling east, when 100 or 150 feet away and immediately applied his brakes. Then assuming that it was in motion he released them momentarily until he discovered that the truck was standing still. He again put on his brakes and ran or skidded straight into and under the back end of the truck. Because of the proximity of the approaching automobile on his left and the debris from road construction work piled up on the right side of the concrete roadway, he could not turn in either direction. The truck was occupying the full right half of the road, and the plaintiff is very positive that there were no lights on the truck. Hansbrough testified that he did not see the truck until they were right on it. He corroborated the plaintiff as to the location of the truck and the absence of any sort of illumination. George Hine was the driver of the automobile which was meeting Simcox. He and three others in the car testified clearly and positively that no lights were burning on the truck when it came within their view nor at the time of the collision. Hine testified that when he pulled beside the accident a moment after the collision the lights were then turned on the truck and the driver got out of the cab. He told Hine that he had run out of gas.

The driver of the truck testified that the gasoline in his operating tank had become exhausted and the car stopped. He got out of the cab, looked in both directions and saw no car coming, raised the hood and turned a valve to get gasoline from an auxiliary tank. This took but a few seconds and a much shorter time than was necessary to put out flares behind his car to warn approaching traffic. Before he got back in the cab he

looked again and saw no automobiles approaching from either direction. Before he could start the truck the plaintiff ran into the back of it. During all this time all the lights on the truck were burning. Other than headlights there were four red lights at the back as well as red reflectors which are illuminated by the lights of the approaching car. All around the body of the truck were amber and green lights. Testimony of a witness or two, who came up after the wreck, that the lights on the truck were then burning has little bearing on the question.

The basis of the contention that the court should have held as a matter of law that the plaintiff was guilty of contributory negligence rests on the physical facts. The road had been but recently opened for traffic, with the sides full of construction debris. There were signs of caution along the way. The tire marks of the automobile extended for about 89 feet on the surface of the road, which, with the terrific impact, as evidenced by the complete demolishment of the automobile, shows excessive speed and a lack of control. It was 850 feet from the bottom of the hill to the place of the accident and the road is straight. Added to this is testimony that while the young men were being taken to a nearby doctor, Simcox regained consciousness and asked what he had hit; but Simcox says he asked whom he had hit. The circumstances under which the statement was made saps an already weak species of evidence of whatever probative value it may have had. The issues of negligence and contributory negligence were submitted to the jury by instructions about which no complaint is made. The argument is that the evidence shows the truck driver acted sensibly and reasonably in the emergency and that his lights clearly revealed the presence of the truck. As to the plaintiff, it is said the physical facts show an utter disregard of the duties imposed upon him as defined by the instructions.

It is an amazing argument that there was no evidence of defendant's negligence. It is admitted that the truck ran out of gas after traveling only 22 miles or so on a long journey, which indicates that it was negligence that stopped the truck. It was stopped on the surface of what is perhaps the most heavily traveled road in the state. Six witnesses—four of them wholly disinter-

ested—say that it was there without any sort of light on it. There was no defect in the lighting system, and a clear violation of Section 2739g-24 of the Statutes was established. Hardware Mutual Casualty Company v. Union Transfer & Storage Company, 205 Ky. 651, 266 S. W. 362. It is elementary law that a motorist has a right to assume that every other person on the highway will comply with the law of the road. We have written several times that a motorist may proceed on the assumption that the way is safe and clear for ordinary travel and is not required to be on the lookout for extraordinary dangers or obstructions which he has no reason to expect; that when traveling at night if he sees no red light ahead he may assume and act on the assumption that there is no other car immediately in front of him and continue on his way until it is made reasonably apparent by his own lights or other means that there is a car ahead or obstruction in the way. Roederer's Adm'x v. Gray, 253 Ky. 669, 69 S. W. (2d) 998; Owen Motor Freight Lines v. Russell's Adm'r, 260 Ky. 795, 86 S. W. (2d) 708; Commonwealth v. Daniel, 266 Ky. 285, 98 S. W. (2d) 897; McLellan v. Threlkeld, 279 Ky. 114, 129 S. W. (2d) 977. In the Owen Motor Freight Lines case, supra, the appellant made the same contention as to the contributory negligence of the driver of a car which collided with its unlighted truck standing in the road, and for reasons therein stated the argument was held untenable.

The appellant says that $3,000 is too much for a broken neck. James S. Simcox suffered a fracture of the vertebra in his neck and two broken ribs, which punctured his lungs. There were some minor injuries also. He was confined in a hospital for two weeks and the same length of time at home. During that month and sometime thereafter, he was required to wear a steel collar and brace in order to prevent the movement of his head. He made a phenomenal, partial recovery. Though at the time of the trial—eight months later— the break had healed, his neck was partially stiff and his head slightly angular. He suffered much pain following the accident and yet has headaches and other physical disturbances. The impairment of the neck muscles causes pain and weakness, and his doctors, eminent in their profession, express doubt that the young man will

ever fully recover. We regard the verdict very reasonable and by no means excessive.

Judgment affirmed.